IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,     )
          )
          Plaintiff,     )    Cv. No. 16-308 JAP
          )
    vs.     )
          )
**NARCIZO SOTO**,     )
          )
          Defendant.     )

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION TO VACATE SENTENCE (DOC. 2)**

The United States respectfully submits this response to Defendant's motion to vacate his sentence (Doc. 2) and states as follows:

**I.      BACKGROUND AND PROCEDURAL HISTORY**

On May 18, 2005, Defendant entered a guilty plea to one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and aiding and abetting, in violation of 18 U.S.C. § 2.  Cr. No. 02-2074 JAP; Doc. 48.  Then, on September 6, 2005, the Court entered a judgment sentencing Defendant to a term of imprisonment of 78 months followed by a four-year term of supervised release.  Cr. No. 02-2074 JAP; Doc. 54.

On November 14, 2013, the Court found that Defendant violated two mandatory conditions of his supervised release by committing two felony offenses in violation of New Mexico state law.  Cr. No. 02-2074 JAP; Doc. 95, pp. 1-2.  The first offense involved aggravated fleeing from a law enforcement officer and the second offense involved escape from a detention facility.  Cr. No. 02-2074 JAP; Doc. 95, p. 1.  The Court found both of these offenses to be crimes of violence under the residual clause of the sentencing guidelines, Cr. No. 02-2074 JAP; Doc. 95, p. 2, which defines crimes of violence as felony offenses involving "conduct that

presents a serious potential risk of physical injury to another[,]" U.S.S.G. § 4B1.2(a).  The Court then sentenced Defendant to concurrent terms of imprisonment of 24 months each to run consecutively to Defendant's previously imposed state prison sentence.  Cr. No. 02-2074 JAP; Doc. 95, p. 2.

In his petition for relief, Defendant asks the Court to vacate his sentence of imprisonment for a term of 24 months based on *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015), which found a virtually identical version of the residual clause in the Armed Career Criminal Act ("ACCA") to be unconstitutionally vague.  Cr. No. 02-2074 JAP; Doc. 103, pp. 1-2.  According to Defendant, the Court should have imposed a sentence in the range of 12-18 months because that is the appropriate guideline range for an defendant in Defendant's criminal history category who violates the terms of his supervised release by committing a felony that is not a crime of violence.  Cr. No. 02-2074 JAP ; Doc. 103, p. 2.  For the reasons set forth below, Defendant's reliance on *Johnson*, including his argument that *Johnson* should apply retroactively to matters involving the application of the residual clause under the federal sentencing guidelines, are lacking in merit and Defendant's petition for relief should therefore be denied.

## II.   *JOHNSON* DOES NOT APPLY RETROACTIVELY ON COLLATERAL REVIEW OF GUIDELINES SENTENCES.

The Supreme Court recently held that the residual clause in the definition of a "violent felony" in the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(2)(B) (ACCA), is unconstitutionally vague.  See *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015).  The new rule of constitutional law announced in *Johnson* is retroactive in *all* ACCA cases – those pending on direct review as of the date *Johnson* was decided, see *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), as well as those that were final before that date that are challenged on collateral review.

2

That is because, as applied to the ACCA, *Johnson* announced a new substantive rule entitled to retroactive effect.  See *Schriro* v. *Summerlin*, 542 U.S. 348, 352 (2004).

This case, by contrast, involves a collateral attack challenging the use of the residual clause in the Federal Sentencing Guidelines' definition of a "crime of violence" to enhance a guidelines sentencing range.  The retroactive character of *Johnson* in ACCA cases on collateral review does not govern the separate question of whether *Johnson* applies retroactively to the Sentencing Guidelines.  While the application of *Johnson* to the ACCA is a substantive change in the law because it necessarily alters the statutory range of permissible sentences, the application of *Johnson* to the Sentencing Guidelines' residual clause produces procedural changes in the sentencing process that are not retroactive on collateral review.

To be clear, the government agrees that *Johnson*'s holding that the ACCA's residual clause is invalid applies to the identically worded residual clause in the career-offender guideline.  See, *e.g.*, *United States v. Darden*, 605 F. App'x 545, 545-546 (6th Cir. July 6, 2015) (per curiam) (unpub.).[1/]  The government has advocated that position in post-*Johnson* guidelines

_____

[1/]  *Darden* bolstered its conclusion that *Johnson* extends to the career-offender guideline by observing that "the Supreme Court has vacated the sentences of other offenders who were sentenced under the residual clause of the Sentencing Guidelines."  605 F. App'x at 546 (citing, *e.g.*, *United States v. Maldonado*, 581 F. App'x 19 (2d Cir. 2014), vacated, 135 S. Ct. 2929 (2015)).  The Supreme Court did not "vacate[] the *sentences*" in *Maldonado* or any other cases, however; it vacated the *judgments* of the courts of appeals then under review and remanded for further consideration in light of *Johnson*.  See, *e.g.*, *Maldonado v. United States*, 135 S. Ct. 2929 (2015) ("[P]etition for writ of certiorari granted. Judgment vacated, and case remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of [*Johnson*].").  Such "GVR" orders – orders summarily granting certiorari, vacating the judgment and remanding for further consideration – merely afford the courts of appeals an opportunity to reconsider their decisions in light of intervening developments, see *Greene v. Fisher*, 132 S. Ct. 38, 45 (2011), and are "not * * * final determination[s] on the merits."  *Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001).  As such, a GVR order cannot "vacate[] the sentence[]" in a particular case. Before *Darden*, the Sixth Circuit had recognized that a GVR order "does not indicate, nor even suggest, that the lower court's decision was erroneous," *Communities for Equity v. Mich. High*

3

sentencing proceedings and in cases pending on direct review as of the date *Johnson* was decided.  See *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) (holding that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final").

But different – and more restrictive – retroactivity principles govern when a defendant seeks to undo a final judgment on the basis of an intervening decision.  See generally *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion).  Under *Teague* and its progeny, courts generally refuse to apply (or announce) new rules of criminal procedure for the first time in cases on collateral review.  *Id*. at 311.  Yet in order to grant collateral relief in a guidelines case based on *Johnson*, the Court would have to announce or apply two new rules that were not established before *Johnson:*  that the guidelines' residual clause is unconstitutionally vague, and that due process vagueness principles apply to the sentencing guidelines.

Although the government agrees that both of these propositions represent the law after *Johnson*, neither proposition was dictated by the law as it existed before *Johnson*.  And because these two propositions involve matters of sentencing procedure, the Court, consistent with *Teague*, should not recognize and apply them in a collateral challenge to a sentence that was final before *Johnson*.   In sum, *Johnson* applies retroactively in all ACCA cases and in guidelines cases on direct review, but it does not apply retroactively in guidelines cases that were final before the decision was announced.

---

*Sch. Athletic Ass'n*, 459 F.3d 676, 680 (6th Cir. 2006), and that such an order "does not necessarily imply that the Supreme Court has in mind a different result in the case, nor does it suggest that our prior decision was erroneous." *In re Whirlpool Products Liability Litigation*, 722 F.3d 838, 845 (6th Cir. 2013); see also *Kenemore v. Roy*, 690 F.3d 639, 642 (5th Cir. 2012); *United States v. Norman*, 427 F.3d 537, 538 n.1 (8th Cir. 2005).

A.     **New Substantive Rules Apply Retroactively On Collateral Review, But New Procedural Rules Almost Invariably Do Not**.

Under the Supreme Court's retroactivity analysis, new rules of criminal procedure do not apply retroactively to cases that became final before the decisions announcing those rules were issued. *Teague*, 489 U.S. at 310; see also *Stringer v. Black*, 503 U.S. 222, 228 (1992) (referring to the "interests in finality, predictability, and comity underlying our new rule jurisprudence").[2/] The *Teague* defense "is not 'jurisdictional' in the sense that [federal courts] * * * must raise and decide the issue *sua sponte*," *Collins v. Youngblood*, 497 U.S. 37, 41 (1990), but where (as here) the government asserts a *Teague* defense, "the court *must* apply *Teague* before considering the merits of the claim." *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994) (emphasis in original).

A *Teague* analysis involves three questions. The first question is whether the defendant is seeking to benefit from a "new" rule. After all, *Teague* was designed to safeguard the threat to finality that is posed by applying rules "not in existence at the time a conviction became final." 489 U.S. at 309. If the rule is new, then the second question is whether the rule is "procedural" as opposed to substantive. If the rule is both new and procedural, *Teague* bars the courts from announcing or applying the rule retroactively in cases on collateral review unless the rule falls within a narrow exception permitting the retroactive application of "watershed" rules of criminal

---

[2/]   *Teague* involved a state prisoner who sought a writ of habeas corpus under 28 U.S.C. § 2254(a), and the plurality's reasoning referred to the interests in federal-state comity as well as finality. 489 U.S. at 308. The courts of appeals have uniformly held, however, that finality interests alone suffice to render *Teague* applicable to federal prisoner collateral attacks. See, *e.g.*, *Duncan v. United States*, 552 F.3d 442, 444 n.2 (6th Cir. 2009); *Lloyd v. United States*, 407 F.3d 608, 611 (3d Cir. 2005); *United States v. Sanchez-Cervantes*, 282 F.3d 664, 667 (9th Cir. 2002); *United States v. Martinez*, 139 F.3d 412, 416 (4th Cir. 1998); *Daniels v. United States*, 254 F.3d 1180, 1194 (10th Cir. 2001) (en banc); *Van Daalwyk v. United States*, 21 F.3d 179, 180 (7th Cir. 1994). Although the Supreme Court has not decided that issue, in *Danforth v. Minnesota*, 552 U.S. 264 (2008), it noted that body of lower court precedent and explained that much of the reasoning applicable to petitions under Section 2254 is "equally applicable" to motions under Section 2255. *Id*. at 269 n.4.

procedure, *i.e.*, rules on par with *Gideon v. Wainwright*, 372 U.S. 335 (1963).  See *Teague*, 489 U.S. at 311.

1.   *New Rules*.   Whether a rule is "new" depends on whether "all reasonable jurists" would have felt compelled by precedent existing at the time the defendant's conviction became final to adopt the rule.  See *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013); see also *Sawyer v. Smith*, 497 U.S. 227, 234 (1990) ("The principle announced in *Teague* serves to ensure that gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered.").  Accordingly, if reasonable jurists could disagree on whether a rule was compelled by prior precedent, then the rule is "new." *Id*.

A rule can be new in either of two ways:  it can involve a request by a defendant that the court break new ground and adopt, in the defendant's own case, a previously unrecognized (or previously rejected) legal rule, or it can involve a request by a defendant that the court extend an existing precedent in a novel manner.  See *Stringer*, 503 U.S. at 228.  Both circumstances implicate *Teague*'s animating concern:  "validat[ing] reasonable, good faith interpretations of existing precedents made by [lower] courts even though they are shown to be contrary to later decisions."  *Butler v. McKellar*, 494 U.S. 407, 414 (1990).

2.   *Procedural Versus Substantive Rules*.   *Teague* does not apply to all new rules, however; rather, the doctrine "by its terms applies only to procedural rules."  *Bousley v. United States*, 523 U.S. 614, 620 (1998).   New substantive rules are outside *Teague*'s purview altogether.  *Id.*[3/]

---

[3/]   *Teague*, and many of the early cases applying its approach, initially characterized substantive rules as an "exception" to the general rule of non-retroactivity.  See *Teague*, 489 U.S.

a.  Substantive rules can result from judicial decisions construing a federal statute or the federal Constitution.

A substantive statutory rule includes a rule that narrows the interpretation of an element in a federal criminal statute, thereby curtailing the statute's reach.  See *Bousley*, 523 U.S. at 620-621 (holding that the narrowing interpretation of the "use" element of the crime defined in 18 U.S.C. § 924(c) adopted in *Bailey v. United States*, 516 U.S. 137 (1995), was substantive).  A substantive constitutional rule includes a rule that "place[s] particular conduct or persons covered by [a] statute beyond the [government's] power to punish."  *Schriro*, 542 U.S. at 352. Substantive conduct-restricting constitutional rules include decisions holding that the First Amendment prohibits criminal prosecution for flag burning. See, *e.g.*, *United States v. Eichman*, 496 U.S. 310 (1990); *Texas v. Johnson*, 491 U.S. 397 (1989).  Substantive penalty-restricting constitutional rules include decisions holding that the Eighth Amendment bars the death penalty for certain offenders.  See, *e.g.*, *Roper v. Simmons*, 543 U.S. 551 (2005) (juveniles); *Atkins v. Virginia*, 536 U.S. 304 (2002) (intellectually disabled).  Those new rules are retroactive in cases on collateral review because they "'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him."  *Schriro*, 542 U.S. at 352 (quoting *Bousley*, 523 U.S. at 620)).[4]

---

at 311; see also *Lambrix v. Singletary*, 520 U.S. 518, 539 (1997).  The Court has since clarified that substantive rules are exempt from *Teague*'s ambit (because *Teague* by definition only reaches procedural rules), and thus are not subject to its bar in the first place.  See *Beard v. Banks*, 542 U.S. 406, 411 n.3 (2004); *Schriro*, 542 U.S. at 352 n.4.  Either way, the bottom line is the same: new substantive rules are not subject to *Teague*'s limitations on retroactivity.

[4]  A new rule will also qualify as substantive, in the government's view, if it expands the range of possible sentencing outcomes beyond that which previously existed, even if it does not categorically prohibit the imposition of a certain punishment.  See U.S. Amicus Br., *Montgomery v. Louisiana*, No. 14-280 (filed July 29, 2015) (arguing that *Miller v. Alabama*, 132 S. Ct. 2455 (2012), which held that the Eighth Amendment forbids the imposition of a mandatory life

b.    Procedural rules – *i.e.*, rules that "regulate[] only the manner of determining the defendant's culpability," *Schriro*, 542 U.S. at 353 – can also result from the construction of a federal criminal statute or the interpretation of the Constitution.

A procedural rule of statutory construction includes a rule declaring that Congress intended for a particular fact in a statute to be an element of a crime, rather than a sentencing factor. See *United States v. Gonzales*, 327 F.3d 416, 416-417 (5th Cir. 2003) (holding that the rule of *Castillo v. United States*, 530 U.S. 120 (2000), which held that firearm type was an element of the crime defined in an earlier version of 18 U.S.C. § 924(c)(1), was a procedural rule). ).[5/]  A procedural rule of constitutional law includes a rule that requires facts to be treated as elements of a crime, see *Apprendi v. New Jersey*, 530 U.S. 466 (2000), or a rule regulating the admissibility of certain evidence at trial, see *Crawford v. Washington*, 541 U.S. 36 (2004).

---

sentence on a juvenile homicide offender and thereby required the availability of lesser sentences, is a substantive rule retroactively applicable on collateral review).  (The Supreme Court granted review to resolve disagreement in the lower courts on *Miller*'s retroactivity and scheduled argument for October 13, 2015.)  Conversely, a new rule that broadens the sentencing court's discretion without changing the lawful range of sentencing outcomes does not apply retroactively to cases on collateral review.  For example, the remedial opinion in *United States v. Booker*, 543 U.S. 220 (2005), expanded sentencers' discretion by excising portions of the Sentencing Reform Act that made the Guidelines mandatory. *Id.* at 245-268.  So did *Pepper v. United States*, 562 U.S. 476 (2011), by excising 18 U.S.C. § 3742(g)(2).  562 U.S. at 493-498.  Yet courts have held that neither decision is retroactively applicable on collateral review.  See, *e.g.*, *Duncan v. United States*, 552 F.3d 442, 445-447 (6th Cir. 2009) (*Booker*'s remedial holding); *Blount v. United States*, 2012 WL 2594109, at **3, 4 & nn.9-10 (E.D. Pa. Jul. 5, 2012) (unpub.) (*Pepper*).

[5/]  Decisions declaring that Congress intended for a fact enumerated in a statute to be an element of a crime (as opposed to a sentencing factor) are qualitatively different from decisions redefining the meaning of a fact that has already been deemed an element of a crime.  The former, illustrated by *Castillo*, are procedural:   a ruling that a fact is an element, rather than a sentencing factor, does not alter the substantive reach of the statute but instead triggers a defendant's rights to have that fact initially found by a grand jury and subsequently found by a petit jury beyond a reasonable doubt.  The latter, illustrated by *Bailey*, are substantive because they narrow the reach of the statute by redefining the boundary between lawful and unlawful conduct.

Unlike substantive rules, these rules do not forbid prosecution or conviction for a crime or otherwise alter the permissible range of outcomes; rather, they concern *how* the ultimate determination (guilt or innocence or the appropriate sentence) must be reached.   In the case of *Crawford*, for example, the rule requires an opportunity for cross-examination of an out-of-court declarant; in the case of *Apprendi* and its progeny, the rules require a jury finding as to the operative fact beyond a reasonable doubt.   Neither changes the range of legally permissible outcomes.

New procedural rules therefore do not implicate the concerns that justify the retroactive application of new substantive rules:  they do not produce a class of persons who have been convicted of non-criminal conduct or alter the range of sentences for which the defendant is eligible, but instead "merely raise the possibility" that the now-invalid procedure might have affected the course of the proceeding.  See *Schriro*, 542 U.S. at 352.  This "more speculative connection" to outcomes has led the Supreme Court to deny retroactive effect to new procedural rules in federal collateral review and thereby protect the finality of criminal judgments.  See *Teague*, 489 U.S. at 311; see also *Bousley*, 523 U.S. at 620.

3.  *Watershed Rules*.  The almost invariable rule that new procedural rules do not apply retroactively to cases on collateral review is subject to a narrow exception that permits the retroactive application of "watershed rule[s] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks*, 494 U.S. 484, 495 (1990).  To come within this "extremely narrow" exception, *id*., "a new rule must meet two requirements: infringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction, and the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Tyler v. Cain*, 533 U.S. 656, 665 (2001).  Although the

9

Supreme Court has never found that a new procedural rule qualifies as watershed, see *Whorton v. Bockting*, 549 U.S. 406, 417, 418 (2007), it has explained that the exception is intended for rules bearing the same "primacy and centrality" to the criminal justice process as the rule of *Gideon v. Wainwright*, 372 U.S. 335 (1963).  See, *e.g.*, *Saffle*, 494 U.S. at 495; *O'Dell v. Netherland*, 521 U.S. 151, 167 (1997) (new rule deemed not to be watershed because it was "not on par" with the "sweeping rule of *Gideon*").

      **B.**      **A Rule That *Johnson* Extends To The Sentencing Guidelines Would Represent A New, Non-Watershed Rule Of Procedure**.

A ruling that *Johnson* renders the residual clause in the guidelines unconstitutionally vague depends on the announcement of not one, but two, new non-watershed rules of criminal procedure.  Accordingly, *Teague* bars the Court from announcing those rules and from granting defendant collateral relief from his guidelines sentence.

      1.      *A Rule Extending Johnson To The Federal Sentencing Guidelines Would Be "New."*

No prior precedent dictated the conclusion that the guidelines' residual clause is unconstitutionally vague.  To the contrary, the Supreme Court had twice rejected the argument that the identically worded residual clause in the ACCA was vague when that argument was pressed in dissenting opinions.  See *James v. United States*, 550 U.S. 192, 210 n.6 (2007); *Sykes v. United States*, 131 S. Ct. 2267, 2277 (2010).  To conclude as it did, *Johnson* had to "overrule[] * * * [the] contrary holdings in *James* and *Sykes*," 135 S. Ct. at 2563, and "there can be no dispute that a decision announces a new rule it if expressly overrules a prior decision."  *Graham v. Collins*, 506 U.S. 461, 467 (1993); accord *Saffle*, 494 U.S. at 488.

The conclusion that *Johnson* announced a new rule is particularly clear in this case, where this Court may grant relief only by extending *Johnson*'s holding to the guidelines.

*Johnson* voided the ACCA's residual clause for vagueness, and in doing so, abandoned the Court's previous efforts to narrow the scope of that clause through judicial construction. 135 S. Ct. at 2556-2560, 2563. Yet *Johnson* nowhere mentioned the Sentencing Guidelines, even though the guidelines contain an identically-worded residual clause in Section 4B1.2, and even though the government's supplemental brief in *Johnson* referred to Section 4B1.2's commentary in arguing that possession of a sawed-off shotgun poses an inherent risk of violence. See U.S. Supp. Br. 10, *Johnson v. United States*, No. 13-7120 (filed Mar. 20, 2015). A rule that the career-offender guideline's residual clause is unconstitutionally vague in light of *Johnson* would therefore be a "new" rule.

> 2. *A Rule Extending Johnson To The Federal Sentencing Guidelines Would Be "Procedural."*

Applying *Johnson* to a residual clause included in the sentencing guidelines would also be a procedural rule subject to *Teague*.

a. The effect of *Johnson* in the Guidelines context stands in contrast to the effect of *Johnson* under the ACCA. Under the ACCA, when a court relied on the residual clause to find that the defendant had the necessary three prior convictions, the defendant's sentence was elevated from a maximum of ten years to a minimum of 15 years. Compare 18 U.S.C. § 924(a)(2) with 18 U.S.C. § 924(e)(1). The constitutional rule announced in *Johnson* renders the 15-year minimum prison sentence illegal, and that change is substantive: it alters the permissible ranges of sentences. See, *e.g.*, *Price v. United States*, --- F.3d ---, 2015 WL 4621024, at *3 (7th Cir. Aug. 4, 2015) ("*Johnson*, we conclude, announced a new substantive rule [in an ACCA case because a] defendant who was sentenced under the residual clause necessarily bears a significant risk of facing a punishment that the law cannot impose upon him."); *In re Rivero*, --- F.3d ---,

2015 WL 4747749, at *2 (11th Cir. Aug. 12, 2015) ("[W]e agree [with the defendant] that *Johnson* announced a new substantive rule of constitutional law.").[6/]

Misapplications of the Sentencing Guidelines, in contrast, do not have the same consequences. A rule invalidating the crime-of-violence residual clause would establish that the defendant's guidelines range was incorrectly calculated, but it would not disturb the statutory boundaries for sentencing set by Congress for the crime. The career-offender guideline does not trigger a statutory mandatory minimum sentence that would not otherwise apply and does not elevate the statutory maximum, as is true under the ACCA. See *Mistretta v. United States*, 488 U.S. 361, 396 (1989) (Sentencing Guidelines do not usurp "the legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress"). Indeed, guidelines sentences must always be within the limits set by Congress; as a result, a guidelines sentence imposed on the basis of an incorrect guidelines range may be erroneous, but it is not illegal or unlawful as in a case involving prejudicial *Johnson* error under the ACCA. See *Sun Bear v. United States*, 644 F.3d 700, 705

---

[6/]  *Price* and *Rivero* both involved applications by defendants for permission to file a second or successive Section 2255 motion, which requires the defendant to make a *prima facie* showing that the new constitutional rule at issue has been "made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2255(h)(2). Although *Price* (an ACCA case) and *Rivero* (a career-offender case) both concluded that *Johnson* announced a new substantive rule of constitutional law, they disagreed about whether the Supreme Court had "made" that rule retroactive to cases on collateral review. See generally *Tyler v. Cain*, 533 U.S. 656, 662 (2001) (explaining that a new rule has been made retroactive by the Supreme Court to cases on collateral review when precedent logically and necessarily dictates that result). *Price*'s holding and reasoning are correct. *Rivero*'s holding – that career-offender claims are not redressable in a successive collateral attack – is correct, but portions of the court's opinion, including its view that *Johnson* is a substantive rule as applied to the guidelines, are incorrect. Indeed, *Rivero* had no need to comment on that issue because it held that the Supreme Court had not "made" *Johnson* retroactive to cases on collateral review for purposes of a successive collateral attack. In any event, this case involves an initial motion to vacate under Section 2255, not a successive motion, so the precise issue on which those courts disagreed is not implicated here.

(8th Cir. 2011) (en banc) (explaining that "Sun Bear's 360-month [guidelines] sentence," imposed on the basis of an error in classifying him as a mandatory career offender, "is not unlawful" because "[a]n unlawful or illegal sentence is one imposed without, or in excess of, statutory authority").[7/]

In cases describing appellate review under *United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court has characterized errors in calculating a defendant's advisory guidelines range as "procedural," rather than substantive.  See, *e.g.*, *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) ("Failing to calculate the correct [advisory] Guidelines range constitutes procedural error.") (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).  That reflects the role of the Guidelines in the sentencing process:  they are a step in imposing sentence, not a statutory direction on the range of available sentences.  And although the meaning of "substance" and "procedure" can vary based on context, see *Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988), one court of appeals has relied on *Peugh*'s reference to "procedural error" to conclude that new rules affecting the calculation of a defendant's advisory guidelines range are procedural and thus not retroactive on collateral review.  See *Hawkins v. United States*, 724 F.3d 915, 917-918 (7th

---

[7/]  *Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011), stated that a misapplication of the formerly-mandatory career-offender guideline rendered a career-offender sentence "unlawful."  *Id.* at 627; see also *United States v. Doe*, --- F.3d ---, 2015 WL 5131208, at *17 (3d Cir. Sept. 2, 2015) (following *Narvaez*).  That characterization is incorrect, however, and conflicts with the Seventh Circuit's prior cases defining an "illegal sentence" as one that is "outside the applicable statutory range."  *United States v. Corbitt*, 13 F.3d 207, 210 n.6 (7th Cir. 1993); see also *United States v. Wolf*, 90 F.3d 191, 193 (7th Cir. 1996) (sentence requiring defendant to pay a fine to two charities was "illegal" because "[t]he court had no statutory authority to sentence [defendant] to pay a fine to anyone other than the United States, and a sentence imposed outside the authority granted by statute is an illegal sentence").  Indeed, the lone authority cited by *Narvaez* to support that description, *Welch v. United States*, 604 F.3d 408 (7th Cir. 2010), involved a misapplication of the ACCA, not the guidelines; as such, the sentence in *Welch* exceeded the statutory maximum and thus was unlawful under *Corbitt*.  *Narvaez* erred by importing *Welch* to the distinct context of the guidelines.

Cir. 2013) (supplemental opinion on denial of rehearing) (suggesting that because the Supreme Court described use of the incorrect Guidelines range as "procedural error," the Ex Post Facto holding in *Peugh* would not be applied retroactively on collateral review), cert. denied, 134 S. Ct. 1280 (2014); see also *Herrera-Gomez v. United States*, 755 F.3d 142, 146-147 (2d Cir. 2014) (holding that *Peugh* announced a new, non-watershed procedural rule that could not support a second-or-successive Section 2255 motion).

b.  Nor does *Johnson* qualify as a substantive rule on the theory that it expands the sentencer's discretion to consider a broader range of options than those that existed previously. A rule invalidating a mandatory minimum statutory punishment illustrates this type of substantive rule.  See *Miller v. Alabama,* 132 S. Ct. 2455 (2012) (invalidating mandatory life without parole for juvenile homicide defendants).  At the time of sentencing, the court had one, and only one, sentencing option – life imprisonment.  After the Supreme Court's decision in *Miller*, however, the sentencer in such a case must have discretion to consider a broader and more lenient range of sentencing options than those that existed previously.  That rationale does not apply with respect to an error in calculating a defendant's guidelines range, however, because courts always had discretion, in admittedly varying degrees, to consider a range of sentencing options in guidelines cases.

Before *United States v. Booker*, *supra*, sentencing courts had the authority to "depart" from the guidelines range in appropriate cases.  See U.S.S.G. § 5K2.0, p.s.; see also *Koon v. United States*, 518 U.S. 81, 92 (1996); *Williams v. United States*, 503 U.S. 193, 205 (1992) ("The selection of the appropriate sentence from within the guideline range, as well as the decision to depart from the range in certain circumstances, are decisions that are left solely to the sentencing court.").  After *Booker*, sentencing courts have broader authority to "vary" from the now-

advisory guidelines range, see *Booker*, 543 U.S. at 245-246, including, in particular, the career-offender guideline range.  See, *e.g.*, *Spencer v. United States*, 773 F.3d 1132, 1142 (11th Cir. 2014) (en banc) (stating that "sentencing courts depart or vary from the guideline range more often when they sentence career offenders").  That judicial authority to impose lesser sentences than called for by the guidelines illustrates that an erroneous career-offender designation is a procedural step in a multi-step process that results in a court's selection of a sentence, not a substantive rule that expands or contracts the statutory range of outcomes.  Accordingly, *Johnson*'s application to the guidelines constitutes a procedural rule, not a substantive decision entitled to retroactive application in guidelines cases on collateral review.[8/]

3.  *A Rule Extending Johnson To The Federal Sentencing Guidelines Would Not Be "Watershed."*

The new procedural rule resulting from the extension of *Johnson*'s holding to the guidelines' residual clause would not be "watershed."  An error in calculating a defendant's

---

[8/]   The government previously conceded that the rules announced in *Begay v. United States*, 553 U.S. 137 (2008); *Chambers v. United States*, 555 U.S. 122 (2009), and *Descamps v. United States*,  133 S. Ct. 2276 (2013), were substantive, and hence retroactive, on collateral review in ACCA and guidelines cases alike.  See, *e.g.*, *Narvaez v. United States*, 674 F.3d 621, 625 (7th Cir. 2011) (noting concession that *Begay* and *Chambers* are retroactive in a guidelines case).  Courts considering the issue agreed that these decisions were retroactive in ACCA cases, but some courts expressed doubt about whether these decisions were retroactive in guidelines cases under both the formerly-mandatory guidelines, see *Sun Bear v. United States*, 644 F.3d 700, 703 (8th Cir. 2011) (en banc), and the now-advisory guidelines, see *Hawkins v. United States*, 724 F.3d 915, 917-918 (7th Cir. 2013) (supplemental opinion).  After reexamining its position on this issue in light of *Johnson*, the government now believes that rules relating solely to the calculation of a defendant's guidelines range (mandatory and advisory alike) are procedural, and hence not retroactive to cases on collateral review.  The government's prior contrary concessions do not bind this Court.  See, *e.g.*, *United States v. Ogles*, 440 F.3d 1095, 1099 (9th Cir. 2006) (en banc) ("We are not bound by a party's concession as to the meaning of the law, even if that party is the government and even in the context of a criminal case.").  Nor do they confer any rights upon defendants.  Cf. *United States v. Apel*, 134 S. Ct. 1144, 1151 (2014) ("Their views may reflect overly cautious legal advice based on division in the lower courts.  Or they may reflect legal error.  Either way, we have never held that the Government's reading of a criminal statute is entitled to any deference.").

guidelines *range* does not necessarily render the sentence unfair or unreliable in the way that a complete deprivation of the right to counsel renders a trial conducted without counsel unfair and unreliable.  See, *e.g.*, *United States v. Cronic*, 466 U.S. 648, 659 (1984) (complete denial of counsel at a critical stage renders the trial "unfair," and the "adversary process itself presumptively unreliable").  There will be many cases where the sentencing court's reliance on the residual clause did not affect the sentence (*i.e.*, cases where the court indicates that it would have imposed the same sentence regardless of the range, or where the defendant has other qualifying prior convictions).

*Johnson* in any event does not alter our understanding of the bedrock procedural elements essential to the fairness of a sentencing proceeding.  *Johnson* did not recognize, for the first time, that the due process clause prohibits vague penal laws; rather, it merely extended that well-recognized constitutional principle, see, *e.g.*, *Lanzetta v. New Jersey*, 306 U.S. 451, 458 (1939), to hold a particular statutory enhancement unconstitutionally vague.  See *Johnson*, 135 S. Ct. at 2577.  But new rules that merely apply a pre-existing legal principle in a new context do not "effect a sea change in criminal procedure comparable to that wrought by *Gideon*." *Panetti v. Stephens*, 727 F.3d 398, 414 (5th Cir. 2013).

**B.      A Rule That The Sentencing Guidelines Are Subject To Vagueness Challenges Would Represent A New, Non-Watershed Rule Of Procedure**.

The application of *Johnson* here would require application of an additional new procedural principle:  it would require the conclusion that sentencing guidelines that form part of the process for determining a defendant's sentence within a statutory range must conform to constitutional standards that prohibit vague criminal laws.  The government does not dispute that, in light of *Peugh*'s analysis of the guidelines in applying Ex Post Facto principles, and

*Johnson's* articulation of vagueness doctrine in the sentencing context, today, it is established that the Sentencing Guidelines must meet due process vagueness standards.   But courts can only reach that conclusion by combining – and thereby extending – two distinct lines of precedent, one of which applied due-process vagueness principles to sentencing *statutes* and one of which concluded that the advisory guidelines implicate a separate constitutional provision (the Ex Post Facto Clause) that is tied in part to notice principles.   *Teague* bars this Court from doing so for the first time on collateral review for cases that became final before *Johnson*.

        1.     *A Rule Allowing Vagueness Challenges To The Federal Sentencing Guidelines Would Be "New."*

No pre-*Johnson* precedent dictated, to all reasonable jurists, the conclusion that the Sentencing Guidelines are amenable to vagueness challenges.   *United States v. Batchelder*, 442 U.S. 114 (1979), a pre-guidelines-era case, suggested that sentencing statutes that do not specify "with sufficient clarity the consequences of violating a given criminal statute" may be vulnerable to vagueness challenges, *id.* at 123, but that language was not necessary to the decision because the statute at issue "unambiguously specif[ied] * * * the penalties available upon conviction." *Id.*   Authority that supports a proposition "in dictum" does not "'control[]' or 'dictate[]' [a] result" for *Teague* purposes.   *Lambrix v. Singletary*, 520 U.S. 518, 529 (1997); cf. *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (opinion of O'Connor, J., for the Court) (statutory provision limiting federal habeas corpus relief for state prisoners to cases where the lower court decision violates "clearly established Federal law," which incorporates *Teague*'s "new rule" standards, refers "to holdings, as opposed to dicta").

*Peugh v. United States*, *supra*, determined that the advisory guidelines are subject to the Ex Post Facto Clause, *id.* at 2078, but that decision did not address due process vagueness

principles.   Although *Peugh*'s reasoning supports the conclusion that due process vagueness review applies to the Sentencing Guidelines, it does not dictate that result.   See, *e.g.*, *Beard v. Banks*, 542 U.S. 406, 414 (2004) (emphasizing that existing precedent must "compel," not merely "support," the result); *Sawyer*, 497 U.S. at 236 (prior decisions may "inform * * * the analysis of [a] claim" without "compel[ling]" it).

The conclusion that a rule that sentencing guidelines must conform to due process vagueness principles is "new" under *Teague* is buttressed by several additional factors.   First, historically, the traditional sentencing systems in this country afforded wide, unstructured discretion to sentencing courts.   In those systems, judges both determined the factors that influence particular sentences and the weight placed on those factors in light of the defendant's background, criminal history, and conduct.   See generally *Koon*, 518 U.S. at 113; *Williams* v. *New York*, 337 U.S. 241, 246 (1949).   Yet no court ever suggested (much less held) that such a scheme – which afforded little, if any, notice of what sentence a defendant would receive and permitted outcomes that differed from judge to judge – was unconstitutionally vague.

Second, before *Peugh* and *Johnson*, three of the four courts of appeals to consider the issue rejected the argument that the guidelines were subject to due process vagueness review. See *United States v. Brierton*, 165 F.3d 1133, 1139 (7th Cir. 1999); *United States v. Smith*, 73 F.3d 1414, 1417-1418 (6th Cir. 1996); *United States v. Wivell*, 893 F.2d 156, 159-160 (8th Cir. 1990).   Those circuits rested their holdings on the observation that "[t]he Guidelines do not establish the illegality of any conduct," and the view that "a defendant has no constitutional right to * * * directives" that "are designed to assist and limit the discretion of the sentencing judge." *Brierton*, 165 F.3d at 1139; see also *Wivell*, 893 F.2d at 160 ("Even vague guidelines cabin discretion more than no guidelines at all."); *Smith*, 73 F.3d at 1417-1418.   The Ninth Circuit held

otherwise, see *United States v. Johnson*, 130 F.3d 1352 (1997) (citing *United States v. Gallagher,* 99 F.3d 329, 334 (9th Cir. 1996)), but even it acknowledged that vagueness challenges to the guidelines "have been questioned as theoretically unsound," *id.* at 1354 (citing *Wivell*, 893 F.2d at 159-160). And as in *Batchelder*, the analysis in *Johnson* and *Gallagher* was unnecessary to the decision because the challenged provisions were found not to be vague. See *Johnson*, 130 F.3d at 1354; *Gallagher*, 99 F.3d at 334.

Courts have expressed different views on whether circuit court precedent (as opposed to Supreme Court precedent) can ever "dictate" a rule for purposes of *Teague*. Compare *Soffar v. Cockrell*, 300 F.3d 588, 598 (5th Cir. 2002) (en banc) ("In order to qualify as existing, a rule must be dictated by Supreme Court precedent, not circuit court precedent.") with *Schwab v. Crosby*, 451 F.3d 1308, 1323 (11th Cir. 2006) ("A rule is considered new for *Teague* purposes unless it is dictated by precedent – mostly Supreme Court precedent, although federal court of appeals decisions are entitled to some respect in the inquiry."). But "[e]ven assuming that circuit precedent, as opposed to Supreme Court precedent, is relevant in determining whether a rule is dictated by precedent under *Teague*," *Billings v. Polk*, 441 F.3d 238, 253 n.14 (4th Cir. 2006); *Clemmons v. Delo*, 124 F.3d 944, 955 n.11 (8th Cir. 1997), the fact that three circuits disagreed with the Ninth Circuit's approach supports the conclusion that reasonable jurists, before *Peugh* and *Johnson*, would not have felt compelled to adopt that view.

2.   *A Rule Allowing Vagueness Challenges To The Federal Sentencing Guidelines Would Be "Procedural."*

A rule requiring that particular Sentencing Guidelines must be drafted with the same level of specificity as criminal statutes in order to satisfy due process vagueness concerns would be a procedural rule. It would dictate *how* Sentencing Guidelines must be framed in order to

19

comply with due process; it would not dictate any particular substantive outcomes.  This is evident from the sentencing process in the federal system, which encompasses at least three steps:  first, a court determines the applicable guidelines range by applying the guidelines to the facts; second, it determines whether any deviations from that range are warranted (either by way of a "departure" or, in the post-*Booker* era, a "variance"); and third, it determines the appropriate sentence.  Because the calculation of the guidelines range is itself merely a step in the process whereby a judge determines the appropriate sentence to impose, a rule requiring that the sentencing range (at step one) be defined with a certain level of precision is a rule of process.  It relates to the *manner* for determining the starting point for federal sentencing – the initial calculation of the sentencing range – but it does not dictate particular sentencing outcomes, or alter the permissible range of outcomes.  And this is particularly true for the advisory guidelines system in place after *Booker*:  sentencing courts must calculate and consider the sentencing range, but the overarching obligation of a sentencing court is to impose a sentence that is sufficient but not greater than necessary to serve the purposes of sentencing.  18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).  A rule that the guidelines, particularly advisory ones, must satisfy due process vagueness standards therefore differs fundamentally and qualitatively from a holding that a particular criminal statute or sentencing provision is substantively vague.

> 3.    *A Rule Allowing Vagueness Challenges To The Federal Sentencing Guidelines Would Not Be "Watershed."*

A new procedural rule permitting vagueness challenges to the Guidelines would not rank as a watershed rule.  A guideline would be entirely reasonable if it directed the judge to impose a "substantially" greater sentence within a range if the defendant's conduct caused "serious bodily

injury," or displayed a "significant disregard of the risk of injury," even though those qualitative terms afford considerable leeway in application. Cf. *Johnson*, 135 S. Ct. at 2561 (distinguishing case-specific determinations). A rule that requires Sentencing Guidelines to conform to a particular level of precision therefore is an incremental change in sentencing procedure, not a critical component of sentencing "accuracy." And in any event, a rule that vagueness principles apply to the Sentencing Guidelines would not alter our understanding of the "bedrock" elements of sentencing. A rule allowing Guidelines to be challenged on vagueness grounds would not compel the States to adopt sentencing guidelines in the way *Gideon* compelled States to provide counsel for indigent defendants. And such a rule would be relatively narrow: it would pertain only to guidelines that employ indeterminate terminology as measured against "an idealized ordinary case," rather than actual facts. See *Johnson*, 135 S. Ct. at 2561 ("As a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct."). Such a rule lacks the sort of far-reaching, across-the-board ramifications that inhere in the *Gideon* rule. Accordingly, the *Johnson* rule "has none of the primacy and centrality of the rule adopted in *Gideon*." *Saffle*, 494 U.S. at 495; see also *Whorton*, 549 U.S. at 421 (rule at issue "is not in the same category with *Gideon*").

## III.   CONCLUSION

For the foregoing reasons, Defendant's argument that *Johnson* should apply retroactively to guideline sentences in cases involving application of the residual clause of U.S.S.G. § 4B1.2(a) is meritless and Defendant's motion to vacate his sentence should therefore be denied.

Respectfully submitted,

DAMON P. MARTINEZ
United States Attorney

21

*Electronically filed 05/13/2016*

SEAN J. SULLIVAN
Assistant United States Attorney
Post Office Box 607
Albuquerque, NM 87103
(505) 346-7274

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 13th day of May, 2016, I filed the foregoing pleading electronically through the CM/ECF system, which caused counsel for defendant to be served electronically.

*Electronically filed 05/13/2016*
SEAN J. SULLIVAN
**Assistant U.S. Attorney**